RECEIPT NUMBER 522360

ORIGINAL

31

PETITION UNDER 28 USC § 2254 FOR WRIT OF
HABEAS CORPUS BY A PERSON IN STATE CUSTODY

| UNITED STATES DISTRICT COURT | District Eas |
|---|---|
| Name Andreka Long | Prisoner No 371876 |

JUDGE : Gadola, Paul V.
DECK : Judge Prisoner Deck
DATE : 03/08/2005 @ 14:34:57
CASE NUMBER : 4:05CV40079
HC LONG V STOVALL (EW)

Place of Confinement
Scott Correctional Facility
47500 Five Mile Road
Plymouth, Michigan

| Name of Petitioner (include name under which convicted) | | Name of Respondent (authorized person having custody of petitioner) |
|---|---|---|
| Andreka Long | V. | Clarice Stovall, Warden |

MAGISTRATE JUDGE PEPE

The Attorney General of the State of: Michigan

## PETITION

1. Name and location of court which entered the judgment of conviction under attack Wayne County Circuit Court, Frank Murphy Hall of Justice, 1441 St. Antoine, Detroit, Mi 48226

2. Date of judgment of conviction June 26, 2001

3. Length of sentence 22 years 6 months to 40 years

4. Nature of offense involved (all counts) Second-degree murder.

5. What was your plea? (Check one)
   (a) Not guilty ✓
   (b) Guilty ☐
   (c) Nolo contendere ☐
   If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, give details.

6. If you pleaded not guilty, what kind of trial did you have? (Check one)
   (a) Jury ✓
   (b) Judge only ☐

7. Did you testify at the trial?
   Yes ☐ No ☑

8. Did you appeal from the judgment of conviction?
   Yes ✓ No ☐

9. If you did appeal, answer the following:

(a) Name of court Michigan Court of Appeals

(b) Result Affirmed

(c) Date of result and citation, if known July 22, 2003; No. 237016

(d) Grounds raised See attachment page One

(e) If you sought further review of the decision on appeal by a higher state court, please answer the following:

(1) Name of court Michigan Supreme Court

(2) Result Leave denied

(3) Date of result and citation, if known February 27, 2004; No. 124575

(4) Grounds raised See attachment page Two

(f) If you filed a petition for certiorari in the United States Supreme Court, please answer the following with respect to each direct appeal:

(1) Name of court

(2) Result

(3) Date of result and citation, if known

(4) Grounds raised

10. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions with respect to this judgment in any court, state or federal?
Yes ☐ No √

11. If your answer to 10 was "yes", give the following information:

(a) (1) Name of court

(2) Nature of proceeding

(3) Grounds raised

(4) Did you receive an evidentiary hearing on your petition, application or motion?
Yes ☐ No ☐

(5) Result ______

(6) Date of result ______

(b) As to any second petition, application or motion give the same information:

(1) Name of court ______

(2) Nature of proceeding ______

(3) Grounds raised ______

(4) Did you receive an evidentiary hearing on your petition, application or motion?
Yes ☐ No ☐

(5) Result ______

(6) Date of result ______

(c) Did you appeal to the highest state court having jurisdiction the result of action taken on any petition, application or motion?

(1) First petition, etc. Yes ☐ No ☐

(2) Second petition, etc. Yes ☐ No ☐

(d) If you did *not* appeal from the adverse action on any petition, application or motion, explain briefly why you did not:

12. State *concisely* every ground on which you claim that you are being held unlawfully. Summarize *briefly* the *facts* supporting each ground. If necessary, you may attach pages state additional grounds and *facts* supporting same.

CAUTION: In order to proceed in the federal court, you must ordinarily first exhaust your available state court remedies as to each ground on which you request action by the federal court. If you fail to set forth all grounds in this petition, you may be barred from presenting additional grounds at a later date.

For your information, the following is a list of the most frequently raised grounds for relief in habeas corpus proceedings. Each statement preceded by a letter constitutes a separate ground for possible relief. You may raise any grounds which you may have other than those listed if you have exhausted your state remedies with respect to them. However, *you should raise in this petition all available grounds* (relating to this conviction) on which you base your allegations that you are being held in custody unlawfully.

Do not check any of these listed grounds. If you select one or more of these grounds for relief, you must allege facts. The petition will be returned to you if you merely check (a) through (j) or any one of these grounds.

(a) Conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily with understanding of the nature of the charge and the consequences of the plea.
(b) Conviction obtained by use of coerced confession.
(c) Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure.
(d) Conviction obtained by use of evidence obtained pursuant to an unlawful arrest.
(e) Conviction obtained by a violation of the privilege against self-incrimination.
(f) Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.
(g) Conviction obtained by a violation of the protection against double jeopardy.
(h) Conviction obtained by action of a grand or petit jury which was unconstitutionally selected and impaneled.
(I) Denial of effective assistance of counsel.
(j) Denial of right of appeal.

A. Ground one: See Attachment page Three - Five

Supporting FACTS (state *briefly* without citing cases or law) See Attachment Page Three - Five

B. Ground two: See Attachment, page Six - Nine

Supporting FACTS (state *briefly* without citing cases or law) See Attachment, page Six - Nine

C. Ground three: See Attachment pages Ten - Telve

Supporting FACTS (state *briefly* without citing cases or law) See Attachment, pages Ten - Twelve

D. Ground four: See Attachment, pages Thirteen - Sixteen

Supporting FACTS (state *briefly* without citing cases or law) See Attachment, pages Thirteen - Sixteen

13. If any of the grounds listed in 12A, B, C, and D were not previously presented in any other court, state or federal, state *briefly* what grounds were not so presented, and give your reasons for not presenting them:

14. Do you have any petition or appeal now pending in any court, either state or federal, as to the judgment under attack? Yes ☐ No ✓

15. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:
    (a) At preliminary hearing
    (b) ~~At arraignment and plea~~

(c) At trial Brian E. Selburn, (P29749) 232 Gratiot Ave, Ste 130, Eastpointe Michigan 48021

(d) At sentencing Brian E. Selburn, (P29749) 232 Gratiot Ave, Ste 130, Eastpointe Michigan 48021

(e) On appeal Jonathan B.D. Simon (P35596) Attorney for Appellant, 717 Penobscot Building, 645 Griswold, Detroit, Michigan 48226

(f) In any post-conviction proceeding

(g) On appeal from any adverse ruling in a post-conviction proceeding

16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time?
Yes ☐ No ✓

17. Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?
Yes ☐ No ✓
(a) If so, give name and location of court which imposed sentence to be served in the future:

(b) Give date and length of the above sentence:

(c) Have you filed, or do you contemplate filing, any petition attacking the judgment which the sentence to be served in the future?
Yes ☐ No ☐

Wherefore, petitioner prays that the Court grant petitioner relief to which he may be entitled in this proceeding.

Signature of Attorney (if any)

I declare under penalty of perjury that the foregoing is true and correct. Executed on

(date) 2/23/05

Andreka Long
Signature of Petitioner

## ATTACHMENT PAGE ONE

**No. (9)(d) CONTINUED:**
**GROUNDS RAISED IN THE MICHIGAN COURT OF APPEALS:**

### ISSUE I

THE TRIAL COURT VIOLATED APPELLANT'S DUE PROCESS RIGHT AGAINST COMPULSORY SELF-INCRIMINATION BY REFUSING TO SUPPRESS HER STATEMENT TO THE POLICE, WHICH WAS MADE WHILE SHE WAS SUFFERING FROM A SERIOUS INFECTION WHICH REQUIRED HOSPITALIZATION, AND INDUCED BY A PROMISE THAT SHE WOULD RECEIVE MEDICAL ATTENTION

### ISSUE II

APPELLANT WAS DENIED A FAIR TRIAL WHERE THE JURY WAS PERMITTED TO CONSIDER THE CHARGE OF PREMEDITATED MURDER EVEN THOUGH IT WS UNSUPPORTED BY LEGALLY SUFFICIENT EVIDENCE, RESULTING IN AN IMPROPER COMPROMISE VERDICT.

### ISSUE III

APPELLANT'S CONVICTION MUST BE REVERSED WHERE THE PROSECUTION FAILED TO PRESENT SUFFICIENT EVIDENCE OF GUILT BEYOND A REASONABLE DOUBT.

### ISSUE IV

APPELLANT IS ENTITLED TO RESENTENCING WHERE THE TRIAL COURT CLEARLY ERRED IN SCORING 25 POINTS FOR OFFENSE VARIABLE 6 OG THE SENTENCING GUIDELINES WHERE THE NECESSARY FACTUAL SUPPORT WAS NOT SHOWN BY A PREPONDERANCE OF THE EVIDENCE, MAKING THE SENTENCE A DEPARTURE FROM THE GUIDELINE ABSENT COMPLIANCE WITH DEPARTMENT REQUIREMENTS

ATTACHMENT PAGE TWO

No. (9)(e)(4) CONTINUED:
GROUNDS RAISED IN THE MICHIGAN SUPREME COURT:

ISSUE I

THE TRIAL COURT VIOLATED APPELLANT'S DUE PROCESS RIGHT AGAINST COMPULSORY SELF-INCRIMINATION BY REFUSING TO SUPPRESS HER STATEMENT TO THE POLICE, WHICH WAS MADE WHILE SHE WAS SUFFERING FROM A SERIOUS INFECTION WHICH REQUIRED HOSPITALIZATION, AND INDUCED BY A PROMISE THAT SHE WOULD RECEIVE MEDICAL ATTENTION

ISSUE II

APPELLANT WAS DENIED A FAIR TRIAL WHERE THE JURY WAS PERMITTED TO CONSIDER THE CHARGE OF PREMEDITATED MURDER EVEN THOUGH IT WS UNSUPPORTED BY LEGALLY SUFFICIENT EVIDENCE, RESULTING IN AN IMPROPER COMPROMISE VERDICT.

ISSUE III

APPELLANT'S CONVICTION MUST BE REVERSED WHERE THE PROSECUTION FAILED TO PRESENT SUFFICIENT EVIDENCE OF GUILT BEYOND A REASONABLE DOUBT.

ISSUE IV

APPELLANT IS ENTITLED TO RESENTENCING WHERE THE TRIAL COURT CLEARLY ERRED IN SCORING 25 POINTS FOR OFFENSE VARIABLE 6 OG THE SENTENCING GUIDELINES WHERE THE NECESSARY FACTUAL SUPPORT WAS NOT SHOWN BY A PREPONDERANCE OF THE EVIDENCE, MAKING THE SENTENCE A DEPARTURE FROM THE GUIDELINE ABSENT COMPLIANCE WITH DEPARTMENT REQUIREMENTS.

**ATTACHMENT PAGE THREE**

12 a State *concisely* every ground on which you claim that you are being held unlawfully. Summarize *briefly* the *facts* supporting each ground. If necessary, you may attach pages state addition grounds and *facts* supporting same.

GROUND ONE : THE TRIAL COURT VIOLATED PETITIONER'S DUE PROCESS RIGHT AGAINST COMPULSORY SELF-INCRIMINATION BY REFUSING TO SUPPRESS HER STATEMENT TO THE POLICE, WHICH WAS MADE WHILE SHE WAS SUFFERING FROM A SERIOUS INFECTION WHICH REQUIRED HOSPITALIZATION, AND INDUCE BY A PROMISE THAT SHE WOULD RECEIVE MEDICAL ATTENTION.

Supporting FACTS (state briefly without citing case or law): In determining whether a statement is voluntary, the trial court should consider, among other things the following factors: the age of the accused; his lack of education or his intelligence level; the extent of his previous experience with the police; the repeated and prolonged nature of the questioning; the length of the detention of the accused before he gave the statement in question; the lack of any advice to the accused of his constitutional rights; whether there was an unnecessary delay in bringing him before a magistrate before he gives the confession; whether the accused was injured , intoxicated or drugged, deprived of food, sleep, or medical attention; whether the accused was physically abused; and whether the suspect was threatened with abuse.

Police promises during questioning are another factor in determining whether a Petitioner's statement was voluntary under the totality of the circumstances. The police refused to provide medical treatment until she had provided them with a signed statement. An evidentiary hearing was conducted on January 22, 2001, pursuant to Petitioner's motion's to suppress her statement. At the hearing, Detroit Police homicide investigator Barbara Simon testified that at about 5:00 p.m., October 24, 2000, Petitioner voluntary appeared at Detroit Police headquarters, stating she had heard that they were looking for her regarding the fatal shooting of Danielle Green. Simon met with Petitioner, who stated that she didn't know what was going on and that she wanted to tell her side.

## ATTACHMENT PAGE FOUR

They spoke alone and then with Petitioner's grandmother and uncle, who brought her down. Once Simon verified her identity, she was no longer free to leave. Simon advised Petitioner of her Miranda rights and had her initial each right and sign the form. After providing general background information, Petitioner gave her statement. According to Simon, Appellant stated that she had attended high school, and that she did not receive any promises, did not request counsel, and did not ask to stop providing information. Afterwards, she was given an opportunity to review the statement. She read and signed each page, making no corrections. Afterwards, she was driven to point out the house where Defendant McGhee lived.

Petitioner then testified that she was suffering from stomach pains and was nauseous. She told Simon that she was ill, and Simon promised that she could go to the hospital after she signed the statement. Because of her illness, she did not read the statement before signing it. Petitioner further stated that she never attend high school, that she did not tell Simon that she had, that she received no food or beverage during that time. After vomiting all that night and the following day, she was taken to Receiving Hospital, where she was treated for 7 to 8 days.

The matter was then adjourned for the purpose of obtaining Petitioner's Receiving Hospital medical records. On March 9, 2001, the record were received into evidence. They indicated that Petitioner was admitted October 25, 2000 for abdominal pain, that she had been suffering 4 to 5 days. Here diagnosis was pelvic inflammatory disease secondary to gonococcal infection with a secondary diagnosis of hemangioma versus adenoma of the left lobe of the liver. She was treated with antibiotics and pain medications. The motion was nevertheless, denied.

Applying the above principles to the present case, the trial court clearly erred in finding that Petitioner's statement to Investigator Simon was voluntary and reliable. At the Walker hearing, Simon denied making any threats or promises to Petitioner, and stated that Petitioner did not complain about any physical ailments. Considering the undisputed medical records which confirmed the severity of Petitioner's infection and the

**ATTACHMENT PAGE FIVE**

lengthy treatment she was immediately required to undergo, this claim is inherently incredible. Even if Simon's claim were true, it is still clear that Petitioner was physically unable to tender a voluntary waiver of her right to remain silent.

Certainly, confessions have profound impact on the jury, so much that we may justifiably doubt its ability to put them out of mind even if told to do so," While some statements may concern isolated aspects of the crime or may be incriminating only when linked to other evidence, a full confession in which the defendant discloses the motive for and means of the crime may tempt the jury to rely upon that evidence alone in reaching its decision. In the case of a coerced confession...the risk is unreliable, coupled with the profound impact that the confession has upon the jury, required a reviewing court to exercise extreme caution before determining that the admission of the confession at trial was harmless.

In the present case, absent Petitioner's statement, the prosecutor presented no evidence against her than the fact that she had been involved in a fight with the decedent, and that she was merely present at the time the decedent was shot. Indeed, the evidence against Petitioner was far less compelling than the case against Latonya McGhee, who drove Jordan to the scene. Petitioner is therefore entitled to a new trial.

## ATTACHMENT PAGE SIX

GROUND TWO : PETITIONER WAS DENIED A FAIR TRIAL WHERE THE JURY WAS PERMITTED TO CONSIDER THE CHARGE OF PREMEDITATED MURDER EVEN THOUGH IT WS UNSUPPORTED BY LEGALLY SUFFICIENT EVIDENCE, RESULTING IN AN IMPROPER COMPROMISE VERDICT.

Supporting FACTS (state briefly without citing case or law): The Due Process Clauses of the state and federal Constitutions prohibit a criminal conviction unless the prosecution establishes guilt of the essential elements of a criminal charge beyond a reasonable doubt. The reasonable doubt requirement is a due process safeguard which was developed to protect citizens from dubious and unjust conviction, which result in improper forfeiture of life, liberty and property. A conviction must be reversed if the evidence introduced was insufficient to satisfy a rational juror that each element of the offense had been proven. The proper standards for determining whether a conviction is based on sufficient evidence, taken in the light most favorable to the prosecution, is sufficient to convince a rational trier if fact beyond a reasonable doubt as to all essential elements of the crime. It is not sufficient that the prosecution merely present some evidence or any evidence of guilt. Rather, that evidence has to be sufficient to prove guilt beyond reasonable doubt.

In review, a claim based upon the sufficiency of the evidence, the court is to view the evidence in a light most favorable to the prosecution and determines whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt. Stated another way, where the proofs, taken most favorable to the prosecutor, present no more than a choice between competing probabilities, a judgement of acquittal must be entered.

First degree murder is defined as "wilful, deliberate and premeditated killing." Second-degree murder is defined residually as "[a]ll kinds of murder." Premeditation and deliberation denote more reflection than that which is involved in the mere formation of a specific intent kill.

Before a defendant may be convicted of first-degree murder, the prosecution must prove that the defendant intentionally killed, and that the act of killing was premeditated and deliberate. Although the length of time

needed to weigh a choice before it is made is incapable of precise determination, there must be an interval during which a "second look" may be contemplated.

In the instant matter, following the prosecutor's case-in-chief, counsel moved for a directed verdict as to the charge of first-degree premeditated murder. Specifically, counsel contented that the prosecution has filed to present legally sufficient evidence proving premeditation and deliberation. That motion was denied. Ultimately, the jury returned a verdict of second-degree murder, finding that there was insufficient evidence upon which to sustain a verdict of first degree murder. Appellant submits that it was reversible error to deny her motion for direct verdict on the charged offense of first-degree premeditated murder, and that the evidence at trial was insufficient to support her conviction of second degree murder. Viewing the evidence in a light most favorable to the prosecution, determine whether sufficient evidence was presented to enable a rational trier of fact to find proof beyond a reasonable doubt on all the elements.

First-degree, premeditated murder under Michigan law requires that the actor have an actual intent to kill, and that intent must have been the result of premeditation and deliberation, rather than from a split-second, impulsive decision.

To premeditate is to think about beforehand; to deliberate is to measure and evaluate the major facets of a choice or problem. As a number of courts have pointed out, premeditation and deliberation characterize a thought process undisturbed by hot blood. While the minimum time necessary to exercise this process is incapable of exact determination, the interval between initial though and ultimate action should be long enough to afford a reasonable man time to subject the nature of his response to a second look.

Sufficient evidence of premeditation is not presented by evidence of a motive alone, without proof of some degree of planning or a preconceived design. The reviewing court should look at such factors as the prior relationship of the parties, the accused's actions both before and after the alleged offense, and the circumstances of the offense itself. The brutality of a killing does not itself justify an inference of premeditation and

deliberation. The mere fact that the killing was attended by much violence or that a great many wounds were inflicted is not relevant, on the issue of premeditation and deliberation. As such a killing is just as likely, or perhaps more likely to have been on impulse.

Petitioner contends that there was insufficient evidence tending to show premeditation and deliberation. The ruling denying the motion for directed verdict was directly contrary. This type of record does not adequately support an inference that the assailant in fact did subject his or her actions to a second look. Premeditation and deliberation must occur between the formulation of the specific intent to kill and the act which caused the death. There was no claim in this case, as well as no evidence that Petitioner premeditated an intent to kill prior to the acts which caused the death. Even viewed in a light most favorable to the prosecution, this record would not allow a rational trier of fact to find proof beyond a reasonable doubt that the killing was committed as part of a thought process undisturbed by hot blood.

The jury in fact did not find proof beyond a reasonable doubt that Petitioner acted with premeditation, as they acquitted Petitioner of first degree murder , convicting her of the lesser included offense of second degree murder. In the unique circumstance of this case, however, the conviction of the lesser offense does not render harmless the trial court's erroneous submission of submission of the first degree charge to the jury. Petitioner submits that even under the more stringent standard for harmless error, the submission of the premeditated murder charge to Petitioner's jury requires reversal of the second degree murder conviction.

On this record, it cannot be said that the error in submitting the premeditated murder charge to the jury did not impact the judgement. The jury's concern over the intent issue may well have been resolved by a compromise verdict of the lesser offense. The trial court erred in failing to quash the premeditated charge when timely requested to do so following the close of the prosecutor's case-in-chief. The submission of that charge to the jury was reversible error in the context of this record. The trial court should have reduced the firs-degree murder charge as there was insufficient evidence of premeditation and deliberation to support the charge.

## ATTACHMENT PAGE NINE

The trial court should not have permitted the jury to consider the premeditated murder charge. The trial court is obligated to ensure that the jury is properly instructed in the law applicable to the case. Considering the facts in the instant case in the most favorable light to the prosecution, there was insufficient evidence of premeditation and deliberation to permit the charge of first-degree murder to be considered by the jury. Since no rational trier of fact could have found that these essential elements of the offense were proven beyond a reasonable doubt.

Under Michigan law, the method, brutality and/or the number of wound inflicted does not, standing alone, provide sufficient evidence for proof beyond a reasonable doubt as to premeditation. Here, the trial judge should have granted the pretrial motion to quash the premeditated murder charge and submitted the case to the jury on no more than second-degree murder. Under the circumstances, the fact the jury returned a verdict of second-degree murder did not render harmless the court's erroneous submission to the jury of the first-degree murder and assault with intent to murder charges.

Because the trial court sending the charge of first-degree murder to the jury, the jury was permitted to consider charges that were unwarranted by the evidence. Petitioner was prejudiced when the jury rendered what was obviously a compromise verdict by convicting her of second-degree murder. The resulting conviction should be reversed and remanded for a new trial.

## ATTACHMENT PAGE TEN

GROUND THREE : .PETITIONER'S CONVICTION MUST BE REVERSED WHERE THE PROSECUTION FAILED TO PRESENT SUFFICIENT EVIDENCE OF GUILT BEYOND A REASONABLE DOUBT.

Supporting FACTS (state briefly without citing case or law): When determining whether a decision was based on sufficient evidence, the state court must consider not whether there was any evidence to support the conviction but whether there was sufficient evidence to justify a rational trier of fact in finding guilty beyond a reasonable doubt. Due process requires that before a Petitioner can be convicted of a criminal offense, the prosecution introduce sufficient evidence which could justify a trier of fact in reasonably concluding that petitioner is guilty beyond a reasonable doubt. Proof beyond a reasonable doubt has traditionally been regarded as the decisive between criminal culpability and civil liability. The state courts have long established that in a second degree murder prosecution, there must be evidence that the defendant caused the death of the victim and that the killing was done with malice and without justification. Although the actual intent to kill is not an essential element of second-degree murder, what is essential is that the prosecution show that the killing was done with malice. Malice is defined as a mental state consisting of the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and willful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm.

Black's Law Dictionary defines "willful" as a state of mind of "Intending the result which actually comes to pass; designed; intentional; not accidental or involuntary. When used in the criminal context "willful" refers to an act done with a bad purpose, with an evil intent or maliciously.

In the present case, Petitioner was charged with the premeditated murder of Danielle Green. She was found not guilty of premeditated murder. Instead, she as convicted of the lesser included offense of second-degree murder. The theory of the prosecution was that she aided and abetted co-defendant Ruben Jordan, who inflicted

## ATTACHMENT PAGE ELEVEN

a single gunshot wound, which was the cause of death.

An aider and abettor must either share the intent or have knowledge of the intent of the principal. If the crime charged is different from the crime intended by the aider and abettor and the principle the crime charged must, at the very least, be within the scope of the intended criminal enterprise.

In the present case, the information alleged that the criminal enterprise was the deliberate, intentional and premeditated killing. Petitioner now asks this Honorable Court to vacate her conviction for the second degree murder of Danielle Green. Petitioner did not have the intent of an aider an abettor for this offense was not within the scope of a common criminal enterprise.

In the case at bar, the prosecution presented insufficient evidence to support Petitioner's conviction of second-degree murder for a total want of evidence of a malice, purpose, or wilfulness. There was no evidence of intent to kill, no evidence of intent to cause great bodily harm, and no evidence of intent to do an act in wanton and willful disregard of the likelihood that the natural tendency of such behavior was to cause death or great bodily harm. To the contrary, a critical analysis of the testimony indicates that Petitioner was merely present as a passenger in the car with Jordan and that if left to her own devices, she would have continued the fist fight she and Green had been involved in earlier. Further, that it was Latonya McGhee, a friend of Jordan who drove Jordan to and from the scene of the shooting knowing that he was armed with a long gun and intent upon seeking revenge against Marcus Hurd for his involvement in physically repelling Petitioner and McGhee after McGhee had driven to Green's house earlier.

The totality of the evidence was insufficient to find guilt beyond a reasonable doubt. Petitioner was therefore "made to suffer the onus of a criminal conviction" without sufficient proof. The prosecution's evidence , even when viewed in a light most favorable to the prosecution, failed to establish Petitioner guilt. No rational trier of fact could have found guilt beyond a reasonable doubt. Accordingly, Petitioner's conviction

cannot constitutionally stand and should be reversed.

**ATTACHMENT PAGE THIRTEEN**

GROUND FOUR : PETITIONER IS ENTITLED TO RESENTENCING WHERE THE TRIAL COURT CLEARLY ERRED IN SCORING 25 POINTS FOR OFFENSE VARIABLE 6 OG THE SENTENCING GUIDELINES WHERE THE NECESSARY FACTUAL SUPPORT WAS NOT SHOWN BY A PREPONDERANCE OF THE EVIDENCE, MAKING THE SENTENCE A DEPARTURE FROM THE GUIDELINE ABSENT COMPLIANCE WITH DEPARTMENT REQUIREMENTS

Supporting FACTS (state briefly without citing case or law): Petitioner ASSERTS THAT SHE IS ENTITLED TO RESENTENCING BECAUSE THE STATUTORY Sentencing Guidelines, as scored by the trial court are clearly erroneous. Specifically, Petitioner maintains that the trial court erred in the scored of OV 6, making Peitioner's sentence a departure from the correct Guideline range, and that it was imposed without compliance with the statutory departure requirement. Petitioner asserts that the trial court erred inf inding the facts that are necessary for the scoring, and that evidence does not meet the preponderance of the evidence standard required as a matter of constitutional due process or contested sentencing information. In August of 1998, 1998 PA 317 was signed into law providing statutory Sentencing Guidelines for virtually all felony offenses committed on or after January 1, 1999. Second degree murder, conduct contrary to MCLA 750.317; MSA 28.549, is included in the statutory Sentencing Guidelines in the category of a crime Against a Person and in the M2 Class. MCL 777.16p; MSA 28.1274(26p).

A minimum sentence imposed by a court for an enumerated felony committed on or after January 1, 1999 shall be within the appropriate sentence range. Unlike the judicial Sentencing Guidelines which were mere recommendations, the statutory Sentencing have the effect of law. While a misapplication or erroneous scoring of the judicial Sentencing Guidelines is now rarely cognizable on appeal.

In the present case, over objection from counsel, Petitioner was assessed 25 points for Offense Variable 6 (Intent to Kill or Injure Another Individual) in the scoring of the sentencing guidelines for the second degree murder conviction. As a result, her overall score of the offense variables was 55 points, and the sentencing

## ATTACHMENT PAGE FOURTEEN

guidelines' range was 162 months to 270 months. She was sentenced to a term of 270 to 480 months imprisonment. Petitioner asserts that by the terms of MCL 777.36, she should only have been assessed 10 points, not the 25 point she was given. MCL 777.36 provides:

> Offense variable is the offender's intent to kill or injure another individual. Score offense variable 6 by determining which of the following apply and by assigning the number of points attributable to the one that has the highest number of points:
>
> (a) The offender had premeditated intent to kill or the killing was committed while committing or attempting to commit arson, criminal sexual conduct in the first or third degree, child abuse in the first, a major controlled substance offense, robbery, breaking and entering of a dwelling, home invasion in the first or second degree, larceny of any kind, extortion, or kidnaping or the killing was the murder of a peace officer or a corrections officer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50
>
> (b) The offender had unpremeditated intent to kill to do great bodily harm, or created a very high risk of death or great bodily harm knowing that death or great bodily harm was the probable result 50 points
>
> (c) The offender had intent to injure or killing was committed in an extreme emotional state caused by an adequate provocation and before a reasonable amount of time elapsed for the offender to calm or there was gross negligence amounting to an unreasonable disregard for life . . . . . . . . . . . . . . . 10 point
>
> (d) the offender had no intent to kill ir injure . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 0 points

(2) All of the following apply to scoring offense variable 6.

> (a) The sentencing judges shall score this variable consistent with a jury verdict unless the judge has information that was not present to the jury.
>
> (b) Score 10 points if a killing is intentional within the definition of second degree murder or voluntary manslaughter, but the death occurred in a combative situation or in response to victimization of the offender by the decedent.

Subsection (1)(b) and (1)(c) define the classic second-degree murder case and the classic voluntary manslaughter/heat of passion case, and direct that they should be scored at 25 points and 10 points, respectively. However, the specific scoring directions laid out in subsection (2)(b) direct where a killing is intentional within the definition of either second-degree murder or manslaughter, but was committed in a "combative situation",

the offender is only to be assessed 10 points.

In the present case, OV 6 should have been scored at only, in accordance with MCL 777.36(2)(b). MCL 777.36(2)(a) directs that OV6 should be scored consistent with the jury's verdict. Here, the jury verdict does not equate with a finding that this was not a combative situation. On the contrary, the evidence indicated that it was a combative situation. Petitioner had earlier been involved in combat with the decedent. She was later victimized by Marcus Hurd, the decedent's boyfriend, who possessed a hammer, manhandled her, took a champagne bottle from her, pushed her into a car and ordered he to leave. Thus OV 6 should have been scored no higher than 10 points.

Petitioner submits the trial court clearly erred in finding the facts that are necessary prerequisite for the scoring of OV 6. Further, the correct scoring, as cousel contended, should have been scored 10 points instead of 25 points. This would have reduced the Offense Variable score from 55 to 40, reduce the Offense Severity Level from "II" to "I", and reduce the statutory Sentencing Guidelines range to 144 to 240 months instead of the 162 to 270 months that the sentencing court used to determine its sentence. Because of the lack of a factual predicate for the assessment as to OV6, and the reliance on the guidelines range premised on that misscoring, there has been a constitutionally impermissible use of inaccurate information, which had denied Petitioner due process of the law.

Where a sentencing court imposes sentence under a misapprehension of the applicable law, resentencing is in order. Because of the trial court's misunderstanding of the appropriate and correct minimum sentence range of the statutory Sentencing Guideline arising from the minimum prison sentence of 270 months imposed is actually a departure from the appropriate statutory. Sentencing Guidelines range.

A sentencing judge may depart from the statutory Sentencing Guidelines only if it has a substantial and compelling reason to do so and state on the record the reason for departure. No finding or articulation of a

## ATTACHMENT PAGE SIXTEEN

substantial and compelling reason to depart occurred in the case at bar because the trial court did not believe it was departing. Absent an articulated substantial and compelling reason for departure, resentencing is require.

# Order

**Michigan Supreme Court**
**Lansing, Michigan**

Entered: February 27, 2004

Maura D. Corrigan,
Chief Justice

Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman,
Justices

124575

PEOPLE OF THE STATE OF MICHIGAN,
Plaintiff-Appellee,

v

SC: 124575
COA: 237016
Wayne CC: 00-012764

ANDREKA LONG,
Defendant-Appellant.

_______________________________________/

On order of the Court, the application for leave to appeal the July 22, 2003 judgment of the Court of Appeals is considered, and it is DENIED, because we are not persuaded that the questions presented should be reviewed by this Court.

d0224

I, CORBIN R. DAVIS, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

February 27, 2004     Corbin R. Davis

Clerk

# STATE OF MICHIGAN

# COURT OF APPEALS

DEFENDANT'S COPY

| | |
|---|---|
| PEOPLE OF THE STATE OF MICHIGAN,<br><br>Plaintiff-Appellee, | UNPUBLISHED<br>July 22, 2003 |
| v<br><br>ANDREKA LONG,<br><br>Defendant-Appellant. | No. 237016<br>Wayne Circuit Court<br>LC No. 00-012764 |

Before: Hoekstra, P.J., and Fitzgerald and White, JJ.

PER CURIAM.

Defendant appeals as of right her jury-trial conviction of second-degree murder, MCL 750.317, for which the trial court sentenced her to 22½ to 40 years' imprisonment. We affirm.

Defendant first argues that the trial court erred in refusing to suppress defendant's statement to the police. According to defendant, her statement was involuntary because she was ill at the time she gave the statement and because the statement was induced by a promise that she would receive medical attention.

With respect to whether a statement is voluntary, in *People v Sexton (After Remand)*, 461 Mich 746, 752-753; 609 NW2d 822 (2000), our Supreme Court explained:

> [The Court of Appeals] review of the issue of voluntariness must be independent of that of the trial court. *People v Robinson*, 386 Mich 551, 558; 194 NW2d 709 (1972). However, we will affirm the trial court's decision unless we are left with a definite and firm conviction that a mistake has been made. *Id.*; *People v DeLisle*, 183 Mich App 713, 719; 455 NW2d 401 (1990). Further, if resolution of a disputed factual question turns on the credibility of witnesses or the weight of the evidence, we will defer to the trial court, which had a superior opportunity to evaluate these matters. See *People v Marshall*, 204 Mich App 584, 587; 517 NW2d 554 (1994).
>
> In evaluating the admissibility of a particular statement, we review the totality of the circumstances surrounding the making of the statement to determine whether it was freely and voluntarily made in light of the factors set forth by our Supreme Court in *People v Cipriano*, 431 Mich 315, 334; 429 NW2d 781 (1988):

"[T]he age of the accused; his lack of education or his intelligence level; the extent of his previous experience with the police, the repeated and prolonged nature of the questioning; the length of the detention of the accused before he gave the statement in question; the lack of any advice to the accused of his constitutional rights; whether there was an unnecessary delay in bringing him before a magistrate before he gave the confession; whether the accused was injured, intoxicated or drugged, or in ill health when he gave the statement; whether the accused was deprived of food, sleep, or medical attention; whether the accused was physically abused; and whether the suspect was threatened with abuse.

"The absence or presence of any one of these factors is not necessarily conclusive on the issue of voluntariness. The ultimate test of admissibility is whether the totality of the circumstances surrounding the making of the confession indicates that it was freely and voluntarily made. [Citations omitted.]"

Here, defendant requested and received a *Walker*[1] hearing, at which both defendant and a Detroit police investigator testified concerning the circumstances surrounding defendant's statement to the investigator. From this testimony, it is clear that defendant was advised of her constitutional rights after she presented herself to police headquarters to tell what happened to the victim. Although defendant claimed she did not understand her rights, she testified that she was informed of her rights, she chose not to exercise her right to remain silent, and she did not ask for a lawyer, and she did not ask the investigator to end the process. Consistent with the investigator's testimony, defendant stated that she was not threatened and that the investigator did not trick her into talking. Although defendant testified that she indicated to the investigator that she was ill and that the investigator told her that she would be going to the hospital after giving a statement, the investigator testified to the contrary. Defendant introduced medical records indicating that she received medical treatment in the evening on the day after she made her statement to police. The investigator stated that although she believed that defendant may have been on medication at the time of the statement, defendant did not appear to be intoxicated or on drugs and did not indicate that she was sick or needed medical attention, and that she made no promises to defendant. Given this record, and giving deference to the trial court's findings with respect to issues of credibility, *People v Cartwright*, 454 Mich 550, 555; 563 NW2d 208 (1997) ("An appellate court will defer to the trial court's resolution of factual issues, especially where it involves the credibility of witnesses."), we conclude that the trial court's finding that defendant's statement was voluntary is not clearly erroneous.

Next, defendant argues that it was reversible error for the trial court to deny her motion for a directed verdict on the charged offense of first-degree premeditated murder. We disagree.

"In ruling on a motion for a directed verdict, the trial court must consider in the light most favorable to the prosecutor the evidence presented by the prosecutor up to the time the

---

[1] *People v Walker (On Rehearing)*, 374 Mich 331; 132 NW2d 87 (1965).

motion is made and determine whether a rational trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt." *People v Schultz*, 246 Mich App 695, 702; 635 NW2d 491 (2001). "Circumstantial evidence and reasonable inferences arising therefrom can sufficiently establish the elements of a crime." *Id.*

At trial, the prosecution proceeded against defendant on the charge of first-degree murder on an aiding and abetting theory. The aiding and abetting statute provides that

> [e]very person concerned in the commission of an offense, whether he directly commits the act constituting the offense or procures, counsels, aids, or abets in its commission may hereafter be prosecuted, indicted, tried and on conviction shall be punished as if he had directly committed such offense. [MCL 767.39; see also *People v Mass*, 464 Mich 615, 627-628; 628 NW2d 540 (2001).]

This Court set forth the following requirements necessary to prove a crime under an aiding and abetting theory:

> A person who aids or abets the commission of a crime may be convicted and punished as if he directly committed the offense. *People v Turner*, 213 Mich App 558, 568; 540 NW2d 728 (1995).[2] "To support a finding that a defendant aided and abetted a crime, the prosecution must show that (1) the crime charged was committed by the defendant or some other person, (2) the defendant performed acts or gave encouragement that assisted the commission of the crime, and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time he gave aid and encouragement." *Id.* at 568. [*People v Izarraras-Placante*, 246 Mich App 490, 495-496; 633 NW2d 18 (2001) (footnote added).]

"First-degree premeditated murder requires proof that the defendant intentionally killed the victim and that the act of killing was premeditated and deliberate." *People v Abraham*, 234 Mich App 640, 656; 599 NW2d 736 (1999). "'Premeditation and deliberation require sufficient time to allow the defendant to take a second look.'" *Id.*, quoting *People v Schollaert*, 194 Mich App 158, 170; 486 NW2d 312 (1992). "Premeditation and deliberation may be established by evidence of '(1) the prior relationship of the parties; (2) the defendant's actions before the

---

2 We acknowledge that in *Mass*, *supra*, the Michigan Supreme Court disapproved of the language in *Turner* that in order to support a finding that a defendant aided and abetted a crime, the prosecutor must show that the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time the defendant gave aid and encouragement. *Mass*, *supra* at 627-628. The *Mass* Court further indicated that "[t]he 'requisite intent' for conviction of a crime as an aider and abettor 'is that necessary to be convicted of the crime as a principal,'" and that "[c]onviction of a crime as an aider and abettor does not require a higher level of intent with regard to the commission of the crime than that required for conviction as a principal." *Id.* at 628 (citation omitted). Thus, while the language has been disapproved to some extent, we conclude that the *Mass* Court did not overrule *Turner*, but rather, merely clarified the application of the disputed language taken from *Turner*.

killing; (3) the circumstances of the killing itself; and (4) the defendant's conduct after the homicide.'" *Abraham, supra*, quoting *Schollaert, supra*. "[A]iders and abettors can be liable for specific intent crimes if they possess the specific intent required of the principal or if they know that the principal has that intent." *People v King*, 210 Mich App 425, 431; 534 NW2d 534 (1995).

Here, there was evidence presented at trial that defendant fought with the victim on two prior occasions during the day of the incident. On the first occasion, defendant approached the victim with a knife, and then defendant and codefendant, Ruben Jordan, proceeded to beat the victim until the victim ran into a store. On the second occasion, defendant found the victim and went after her with a champagne bottle; however, a bystander intervened, took the bottle, and pushed defendant back into her car. Defendant then went to Jordan's house and informed him about that confrontation. Jordan then went inside his house and retrieved a gun. Defendant, Jordan, and LaTonya McGhee[3] then began to drive around and look for the victim. Defendant asked people where the victim could be found. After the group found the victim, McGhee drove around the corner and stopped the car. Meanwhile, defendant told Jordan to give her the gun so that she could go and "shoot up into the car," but Jordan stated that he would do it. Defendant indicated, in her statement, that she asked Jordan for the gun because she wanted to shoot the victim. It was Jordan, however, who exited the car, shot several times, and upon his return to the car, stated, "I got that ho," or "I've got that bitch."

Viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have found the essential elements of first-degree murder on an aiding and abetting theory were proved beyond a reasonable doubt. A rational trier of fact could determine that Jordan shot and killed the victim and that defendant had the requisite intent and gave encouragement and acted to assist in a premeditated and deliberate murder. The trial court did not err in denying defendant's motion for a directed verdict.

Next, defendant argues that there was insufficient evidence to support her conviction of second-degree murder on an aiding and abetting theory. We disagree. "When reviewing a claim regarding the sufficiency of the evidence, this Court examines the evidence in a light most favorable to the prosecution to determine if a rational jury could find that the essential elements of the offense were proved beyond a reasonable doubt." *People v Joseph*, 237 Mich App 18, 20; 601 NW2d 882 (1999).

Again, with regard to aiding and abetting, the prosecutor must demonstrate that

> "(1) the crime charged was committed by the defendant or some other person, (2) the defendant performed acts or gave encouragement that assisted the commission of the crime, and (3) the defendant intended the commission of the crime or had

---

[3] McGhee was charged with one count of first-degree premeditated murder, but pleaded guilty to one count of accessory after the fact to the first-degree premeditated murder charge in exchange for her testimony as a prosecution witness.

knowledge that the principal intended its commission at the time he gave aid and encouragement." [*Izarraras-Placante, supra* , quoting *Turner, supra*.]

The elements of second-degree murder include:

> "(1) a death, (2) caused by an act of the defendant, (3) with malice, and (4) without justification of excuse." *People v Goecke*, 457 Mich 442, 463-464; 579 NW2d 868 (1998). . . . The element of malice is defined as "the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and wilful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm." *Id.* at 464. Malice for second-degree murder can be inferred from evidence that the defendant "intentionally set in motion a force likely to cause death or great bodily harm." *People v Djordjevic*, 230 Mich App 459, 462; 584 NW2d 610 (1998). The offense of second-degree murder does not require an actual intent to harm or kill, but only the intent to do an act that is in obvious disregard of life-endangering consequences. *Goecke, supra* at 466. [*People v Mayhew*, 236 Mich App 112, 125; 600 NW2d 370 (1999).]

In the present case, the same evidence that, viewed in a light most favorable to the prosecution, was sufficient to avoid a directed verdict on the first-degree murder charge is sufficient to support a second-degree murder conviction. Defendant gave encouragement in that she told Jordan what happened to her, drove around with Jordan knowing that he had a gun, asked people where she could find the victim, and asked Jordan for the gun because she wanted to shoot the victim before Jordan shot the victim himself. These acts followed several fights during the day between defendant and the victim, and actually involved defendant's participation in the search for the victim. This evidence, viewed in a light most favorable to the prosecution, is sufficient to establish malice, as there was an intent to kill, to cause great bodily harm, or to do an act in wanton and willful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm through Jordan's act of shooting the victim. These acts establish defendant's participation as an aider or abettor in the crime of second-degree murder. Viewing the evidence in the light most favorable to the prosecution, we conclude that a rational jury could find that the essential elements of second-degree murder on an aiding and abetting theory were proved beyond a reasonable doubt.

Finally, defendant argues that the trial court erred in scoring offense variable ("OV") 6 of the legislative sentencing guidelines at twenty-five points rather than at ten points. We disagree. This Court must affirm all sentences within the guidelines' range "absent an error in scoring the sentencing variables or inaccurate information relied upon in determining the defendant's sentence." MCL 769.34(10). "A sentencing court has discretion in determining the number of points to be scored, provided that evidence of record adequately supports a particular score." *People v Hornsby*, 251 Mich App 462, 468; 650 NW2d 700 (2002).

OV 6 addresses "the offender's intent to kill or injure another individual." MCL 777.36(1). Defendant contends that the trial court improperly scored OV 6 at twenty-five points, as is required when "[t]he offender had unpremeditated intent to kill, the intent to do great bodily harm, or created a very high risk of death or great bodily harm knowing that death or great bodily harm was the probable result." MCL 777.36(1)(b). According to defendant, MCL 777.36(2)(b), which requires that ten points be scored "if a killing is intentional within the

definition of second degree murder or voluntary manslaughter, but the death occurred in a combative situation or in response to victimization of the offender by the decedent," is applicable in the present case.

Defendant argues that the evidence demonstrated that the death occurred in a combative situation because she had earlier been involved in combat with the victim. Although there was evidence that defendant and the victim had engaged in combat earlier on the day of the shooting, there is no evidence that "the death occurred in a combative situation or in response to victimization of the offender by the decedent." MCL 777.36(2)(b). Rather, after their confrontations had ended, defendant and two others drove around looking for the victim, found her, and then the victim was shot. This situation did not represent a combative situation at the time the death occurred. Accordingly, the trial court properly scored OV 6 at twenty-five points.

Affirmed.

/s/ Joel P. Hoekstra
/s/ E. Thomas Fitzgerald
/s/ Helene N. White

ORIGINAL

05-40079

# CIVIL COVER SHEET FOR PRISONER CASES

| | |
|---|---|
| **Name of 1st Listed Plaintiff** Andreka Long | **Name of 1st Listed Defendant** Clarice Stovall |
| **Inmate Number:** 371876 | Defendant's County of Residence (If located in Michigan) Wayne |

MAGISTRATE JUDGE PAUL V. GADOLA

**FACILITIES, LISTED ALPHABETICALLY**

☐ ALGER MAXIMUM FACILITY
INDUSTRIAL DRIVE PARK
P.O. BOX 600
MUNISING, MI 49862
ALGER COUNTY

☐ BARAGA MAXIMUM CORRECTIONAL FACILITY
301 WADAGA ROAD
BARAGA, MI 49908
BARAGA COUNTY

☐ BELLAMY CREEK CORRECTIONAL FACILITY
1727 W. BLUEWATER HIGHWAY
IONIA, MI 48846
IONIA COUNTY

☐ BOYER ROAD CORRECTIONAL FACILITY
10274 BOYER ROAD
CARSON CITY, MI 48811
MONTCALM COUNTY

☐ CHARLES EGELER COORECTIONAL FACILITY
3855 COOPER STREET
JACKSON, MI 49201-7517
JACKSON COUNTY

☐ CHIPPEWA CORRECTIONAL FACILITY
4269 W. M-80
KINCHELOE, MI 49784
CHIPPEWA COUNTY

☐ COOPER STREET CORRECTIONAL FACILITY
3100 COOPER STREET
JACKSON, MI 49201
JACKSON COUNTY

☐ DEERFIELD CORRECTIONAL FACILITY
1755 HARWOOD ROAD
IONIA, MI 48846
IONIA COUNTY

☐ EARNEST C. BROOKS CORRECTIONAL FACILITY
2500 S. SHERIDAN DRIVE
MUSKEGON HEIGHTS, MI 49444
MUSKEGON COUNTY

☐ FEDERAL CORRECTIONAL INSTITUTION - MILAN
P.O.BOX 1000
MILAN, MI 48160-1090
WASHTENAW COUNTY

☐ FLORENCE CRANE CORRECTIONAL FACILITY
38 FOURTH STREET
P.O. BOX 307
COLDWATER, MI 49036
BRANCH COUNTY

☐ G.ROBERT COTTON CORRECTIONAL FACILITY
3500 N. ELM ROAD
JACKSON, MI 49201
JACKSON COUNTY

☐ GENESEE COUNTY JAIL
1002 S. SAGINAW
FLINT, MI 48502
GENESEE COUNTY

☐ GUS HARRISON CORRECTIONAL FACILITY
2727 E. BEECHER STREET
ADRIAN, MI 49221
LENAWEE COUNTY

☐ HANDLON MICHIGAN TRAINING UNIT
1728 BLUEWATER HIGHWAY
P.O. BOX 492
IONIA, MI 48846
IONIA COUNTY

☐ HIAWATHA CORRECTIONAL FACILITY
4533 W. INDUSTRIAL PARK DRIVE
KINCHELOE, MI 49786-0001
CHIPPEWA COUNTY

☐ HURON VALLEY CENTER
3511 BEMIS ROAD
YPSILANTI, MI 48197
WASHTENAW COUNTY

☐ HURON VALLEY CORRECTIONAL FACILITY
3201 BEMIS ROAD
YPSILANTI, MI 48197
WASHTENAW COUNTY

☐ IONIA MAXIMUM FACILITY
1576 W. BLUEWATER HIGHWAY
IONIA, MI 48846
IONIA COUNTY

☐ KINROSS CORRECTIONAL FACILITY
16770 S. WATERTOWER DRIVE
KINCHELOE, MI 49788
CHIPPEWA COUNTY

☐ LAKELAND CORRECTIONAL FACILITY
141 FIRST STREET
COLDWATER, MI 49036
BRANCH COUNTY

☐ MACOMB CORRECTIONAL FACILITY
34625 26 MILE ROAD
P.O. BOX 480999
NEW HAVEN, MI 48048
MACOMB COUNTY

☐ MACOMB COUNTY JAIL
P.O. BOX 2308
MOUNT CLEMENS, MI 48043
MACOMB COUNTY

☐ MARQUETTE BRANCH PRISON
1960 S. US-41
P.O. BOX 779
MARQUETTE, MI 49855
MARQUETTE COUNTY

☐ MID-MICHIGAN CORRECTIONAL FACILITY
8201 N. CROSWELL ROAD
ST. LOUIS, MI 48880
GRATIOT COUNTY

☐ MOUND CORRECTIONAL FACILITY
17601 MOUND ROAD
DETROIT, MI 48212
WAYNE COUNTY

☐ MUSKEGON CORRECTIONAL FACILITY
2400 S. SHERIDAN DRIVE
MUSKEGON, MI 49442
MUSKEGON COUNTY

☐ NEWBERRY CORRECTIONAL FACILITY
3001 NEWBERRY AVENUE
NEWBERRY, MI 49868
LUCE COUNTY

☐ OAKLAND COUNTY JAIL
P.O. BOX 436017
PONTIAC, MI 48343
OAKLAND COUNTY

☐ OAKS CORRECTIONAL FACILITY
1500 CABERFAE HIGHWAY
P.O. BOX 38
EASTLAKE, MI 49626-0038
MANISTEE COUNTY

☐ PARNALL CORRECTIONAL FACILITY
1780 E. PARNALL
JACKSON, MI 49201
JACKSON COUNTY

☐ PARR HIGHWAY CORRECTIONAL FACILITY
2727 E. BEECHER STREET
ADRIAN, MI 49221
LENAWEE COUNTY

☐ PINE RIVER CORRECTIONAL FACILITY
320 N. HUBBARD
ST. LOUIS, MI 48880
GRATIOT COUNTY

☐ RIVERSIDE CORRECTIONAL FACILITY
777 W. RIVERSIDE DRIVE
IONIA, MI 48846
IONIA COUNTY

☐ RYAN CORRECTIONAL FACILITY
17600 RYAN ROAD
DETROIT, MI 48212
WAYNE COUNTY

☐ SAGINAW CORRECTIONAL FACILITY
9625 PIERCE ROAD
FREELAND, MI 48623
SAGINAW COUNTY

☒ SCOTT CORRECTIONAL FACILITY
47500 FIVE MILE ROAD
PLYMOUTH, MI 48170
WAYNE COUNTY

☐ SOUTHERN MICHIGAN CORRECTIONAL FACILITY
4002 COOPER STREET
JACKSON, MI 49201
JACKSON COUNTY

☐ ST. LOUIS CORRECTIONAL FACILITY
8585 N. CROSWELL ROAD
ST. LOUIS, MI 48880
GRATIOT COUNTY

☐ STANDISH MAXIMUM CORRECTIONAL FACILITY
4713 W. M-61
STANDISH, MI 48658
ARENAC COUNTY

☐ STRAITS CORRECTIONAL FACILITY
4387 W. M-80
KINCHELOE, MI 49785-0001

☐ THUMB CORRECTIONAL FACILITY
3225 JOHN CONLEY DRIVE
LAPEER, MI 48446
LAPEER COUNTY

☐ WAYNE COUNTY JAIL
570 CLINTON STREET
DETROIT, MI 48226
WAYNE COUNTY

☐ WESTERN WAYNE CORRECTIONAL FACILITY
48401 FIVE MILE ROAD
PLYMOUTH, MI 48170
WAYNE COUNTY

*OFFICE USE ONLY*

PLAINTIFF ADDRESS: (IF NOT ABOVE)

**BASIS OF JURISDICTION**
☐ 2 US GOVERNMENT DEFENDANT
☒ 3 FEDERAL QUESTION
☐ 4 DIVERSITY

**ORIGIN**
☒ 1 ORIGINAL PROCEEDING
☐ 2 REMOVED FROM STATE COURT
☐ 5 TRANSFERRED FROM ANOTHER DISTRICT COURT

**FEE STATUS**
☒ IFP IN FORMA PAUPERIS
☐ WAI WAIVED
☐ PD PAID

PLAINTIFF'S COUNTY OF RESIDENCE

**NATURE OF SUIT**
☐ 510 MOTION TO VACATE
☒ 530 HABEAS CORPUS
☐ 535 HABEAS/DEATH PENALTY
☐ 540 MANDAMUS
☐ 550 CIVIL RIGHTS
☐ 555 PRISON CONDITIONS

**JURY DEMAND**
CHECK YES ONLY IF DEMANDED IN COMPLAINT
☒ NO
☐ YES

**CASE OPENING**
☒ OPEN AS CV
☐ NO CREDIT REASSIGN TO (MOTION TO VACATE - 2255)

**PURSUANT TO LOCAL RULE 83.11**

1. Is this a case that has been previously discontinued to dismissed? ☐ Yes ☒ No

If yes, give the following information:

Court: ____________________

Case Number: ____________________

Judge: ____________________

2. Other than state above, are there any pending or previously discontinued or dismissed companion cases in this or any other court, including state court? *(Companion cases are matters in which it appears substantially similar evidence will be offered or the same or related parties are present and the cases arise out of the same transaction or occurrence.)* ☐ Yes ☒ No

If yes, give the following information:

Court: ____________________

Case Number: ____________________

Judge: ____________________

Notes: